982 F.2d 20
 1994 A.M.C. 486
 TAINO LINES, INC., Plaintiffs, Appellees,
v.
M/V CONSTANCE PAN ATLANTIC, its Engines, Tackle, Equipment,
etc. et al., Defendants, Appellees.
Curtis Shipping, Inc., Defendant, Appellant.
TAINO LINES, INC., Plaintiffs, Appellees,
v.
M/V CONSTANCE PAN ATLANTIC, its Engines, Tackle, Equipment,
etc. et al., Defendants, Appellees.
Curtis Shipping, Inc., et al., Defendant, Appellant.
 Nos. 92-1530, 92-2133.
 United States Court of Appeals,
First Circuit.
 Heard Nov. 5, 1992.
Decided Dec. 23, 1992.
 
 Harry A. Ezratty, San Juan, PR, for defendant, appellant.
 Juan A. Lopez-Conway, with whom Herbert W. Brown, III and Calvesbert & Brown, San Juan, PR, were on brief, for plaintiffs, appellees.
 Before TORRUELLA and STAHL, Circuit Judges, and SKINNER,* Senior District Judge.
 STAHL, Circuit Judge.
 
 
 1
 In this appeal, defendant-appellant Curtis Shipping, Inc. ("Curtis") challenges the district court's award, without a hearing, of full custodia legis expenses to plaintiff-appellee Taino Lines, Inc. ("Taino") for certain expenditures made by Taino as substitute custodian of defendant in rem the M/V Constance Pan Atlantic ("the vessel"). Finding no error in the district court's ruling, we affirm.
 
 I.
 BACKGROUND
 
 2
 Because the weakness of Curtis's arguments becomes more apparent with a fuller understanding of the convoluted history of this litigation, we set forth the relevant background in some detail. This action began August 15, 1990, when Taino filed a verified complaint in admiralty against the vessel in rem and against Curtis, Robert Brewis, and Connie Frazier in personas.[1] The complaint alleged that Curtis, the owner of the vessel, breached a 1989 Bareboat Charterparty Agreement ("the Agreement") under which Taino had chartered the vessel to carry cargo between the Port of Mayaguez, Puerto Rico, and certain ports in the Dominican Republic. The complaint further requested the entry of judgment and/or the confirmation of an arbitration award[2] in an amount exceeding $269,000 to cover Taino's damages.[3] Finally, the complaint prayed that the vessel, as defendant in rem, "be compelled to act as security to the arbitration in Miami." To that end, the complaint asked the court to issue a warrant for the vessel's arrest. See 9 U.S.C. § 8 (1970).[4]
 
 
 3
 After reviewing Taino's verified complaint, Magistrate Judge Castellanos issued an order directing that the vessel be arrested. See Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules").[5] He also appointed Taino substitute custodian of the vessel. On August 27, 1990, after conducting a post-arrest hearing, Magistrate Judge Castellanos ordered defendants to post security in the amount of $350,000 in order to obtain the release of the vessel. See generally Supplemental Rule E(5) (governing the posting of bonds to release property that has been arrested in rem ). The order specifically stated: "The release of the vessel should be undertaken upon posting of [$350,000] within the next ten (10) days or[,] upon request of [the] aggrieved party[,] the sale of the arrested vessel shall be ordered." Defendants never posted the security.
 
 
 4
 On September 5, 1990, both the in rem defendant vessel and defendants Brewis and Frazier requested a stay of the proceedings until the parties' dispute had proceeded to arbitration. On September 10, 1990, Taino objected to the request for a stay on the grounds that no security had been posted, and moved for the interlocutory sale of the vessel. On September 24, 1990, the district court issued an order notifying defendants that Taino's motion for an interlocutory sale of the vessel would be granted unless security were posted within three days. On September 25, 1990, Curtis filed a notice of stay advising the court that it had filed a Chapter 11 petition for bankruptcy in the United States Bankruptcy Court for the District of Maryland and invoking the automatic stay of 11 U.S.C. § 362 (1979 & Supp.1992). Attached to the notice of stay was a proposed order which apparently contained language directing that the arrest of the vessel be dissolved.[6] Evidently, the proposed order never was noticed to or served upon Taino.[7]
 
 
 5
 For several months, the parties skirmished in both the district court and in bankruptcy court over numerous issues, i.e., whether the interlocutory sale should proceed despite the automatic stay of 11 U.S.C. § 362, whether the in rem action should be stayed, and whether Curtis's filing of the Chapter 11 petition was sufficient for Curtis to obtain the release of the vessel even where it had not posted security. Finally, on February 5, 1991, the bankruptcy court issued an order which (1) enjoined Taino from selling the vessel; (2) directed Taino to turn the vessel over to Curtis "upon the posting by [Curtis] of a bond in favor of Taino ... in the amount of $350,000.00, or such lower amount or none as may be established in equity by the United States District Court for the District of Puerto Rico ..."; (3) enjoined Taino "from continuing the civil action pending in the United States District Court for the District of Puerto Rico"; and (4) modified the automatic stay so that Curtis could both petition the district court to have its bond lowered and/or changed in nature and request that Taino "post a bond for damages which [Curtis] alleges it has suffered[.]"[8]
 
 
 6
 Although the record is not clear on exactly when, sometime in February 1991, Curtis filed with the district court a motion to compel Taino to arbitrate.[9] Taino opposed the motion, arguing (1) that it should not be forced to arbitration without obtaining security from Curtis, and (2) that, in light of the bankruptcy court's February 5, 1991, order, Curtis should be directed to seek relief before the bankruptcy court and not the district court. The district court did not respond specifically to Curtis's motion,[10] and on March 15, 1991, Curtis filed a second motion seeking to compel Taino to proceed to arbitration. Again Taino opposed, arguing that the bankruptcy court was the forum in which Curtis should be pressing its argument. On April 16, 1991, the district court denied Curtis's motion.
 
 
 7
 Meanwhile, on April 11, 1991, Taino had moved before the district court for the interim approval of the fees and expenses it had thus far incurred in its role as custodia legis of the vessel. Curtis opposed the motion, arguing that the automatic stay of 11 U.S.C. § 362 prohibited such approval. On May 10, 1991, the court denied Taino's motion.[11]
 
 
 8
 On May 7, 1991, after considering the parties' arguments on the question of whether Taino could be compelled to arbitration where Curtis had not yet posted security, the bankruptcy court ordered the parties to proceed to arbitration. Arbitration commenced on May 30, 1991. On June 19, 1991, the arbitrators found for Taino in the amount of $144,206 plus prejudgment interest, taxable costs, and the arbitrators' fees. On July 5, 1991, Taino requested that the district court confirm the arbitration award. The court confirmed the arbitrator's award on July 29, 1992.
 
 
 9
 Though nothing in the record documents such fact, Taino represents that, on August 31, 1991, the bankruptcy court lifted the automatic stay and permitted Taino to move for the interlocutory sale of the vessel. On September 3, 1991, Taino so moved before the district court, and simultaneously moved for taxation of its custodia legis expenses. On September 19, 1991, the district court ordered the interlocutory sale of the vessel. The district court confirmed the sale of the vessel on November 15, 1991. Pursuant to court order, proceeds from the sale, in the amount of $331,887, were subsequently placed in an interest bearing savings account.
 
 
 10
 Needless to say, the parties were unable to successfully determine the amount to which Taino was entitled as custodia legis. Thus, the district court directed that the parties file legal memoranda on the issue. The parties complied with the district court's request, and presented the court with yet another volley of motions and replies. On March 30, 1992, after considering the documentation before it, the court, without a hearing, granted Taino's motion for taxation of costs in the amount of $220,438.52, the full amount requested. This appeal followed.
 
 II.
 DISCUSSION
 
 11
 On appeal, Curtis does not dispute either the confirmation of the arbitrators' award or that Taino is entitled to some custodia legis expenses. Rather, Curtis argues: (1) that the district court erred in refusing to exercise its equitable powers to deny Taino those custodia legis expenses which accrued during that period when it unreasonably and unjustly refused to submit to arbitration, and (2) that the district court erred in foregoing a hearing on Curtis's challenge to certain of the custodia legis costs. Both of Curtis's arguments are singularly without merit.A. The Court's Refusal To Award Equitable Relief
 
 
 12
 As noted above, Curtis argues that the district court erred in declining to award Taino less than its full custodia legis expenses. More specifically, Curtis asserts that the district court was obliged to exercise its equitable powers and to reduce its custodia legis award to Taino by some unspecified sum in order to prevent Taino from being unjustly enriched by its obstructionist behavior in refusing to proceed to arbitration until May 1991. We disagree.
 
 
 13
 It has long been settled that "[e]quity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief." Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962); see also Pino v. Protection Maritime Ins. Co., Ltd., 599 F.2d 10, 15 (1st Cir.), cert. denied, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979). Of course, a court's decision on whether or not to exercise its equitable powers is committed to its sound discretion. See Roland M. v. Concord Sch. Comm., 910 F.2d 983, 999 (1st Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991); see also Reyes v. Supervisor of Drug Enforcement Admin., 834 F.2d 1093, 1098-99 (1st Cir.1987). Therefore, we review such a decision only for abuse of discretion. See, e.g., Ferrofluidics v. Advanced Vacuum Components, Inc., 968 F.2d 1463, 1471 (1st Cir.1992); Hiraldo-Cancel v. Aponte, 925 F.2d 10, 13 (1st Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 637, 116 L.Ed.2d 655 (1991); see also Kingstate Oil v. M/V Green Star, 815 F.2d 918, 922 (3rd Cir.1987) (decision on whether to allow application for custodia legis expenses reviewed for abuse of discretion).
 
 
 14
 Here, Curtis's argument that the district court abused its discretion in refusing to reduce Taino's custodia legis award strains credulity. The record amply reflects that Taino was prepared to proceed to arbitration as soon as Curtis posted security. Despite the bankruptcy court's eventual ruling to the contrary,[12] it appears to us that Taino's position was neither frivolous nor taken in bad faith.[13] Furthermore, when the bankruptcy court seemingly rejected Taino's argument by ordering it to proceed to arbitration in May 1991, Taino promptly complied with the bankruptcy court's order.
 
 
 15
 More importantly, however, the record overwhelmingly indicates that Curtis is at least as responsible as Taino for the length of time that the vessel was under arrest. It was Curtis who never posted security to release the vessel in the manner provided for in the Supplemental Rules. Moreover, it was Curtis who filed a Chapter 11 petition in order to prevent the vessel from being sold in September 1990, and then alternated between defensive invocations of the automatic stay of 11 U.S.C. § 362 and affirmative attempts both to release the vessel from arrest and to compel Taino to proceed to arbitration. In light of these facts, Curtis's lamentations about the length of time between the seizure of the vessel and its eventual sale can most charitably be described as unpersuasive.
 
 
 16
 In sum, we find that the district court acted well within its discretion in refusing to exercise its equitable powers to reduce Taino's custodia legis award. Accordingly, we affirm the district court's ruling awarding Taino its full custodia legis expenses.
 
 B. The Court's Refusal To Hold A Hearing
 
 17
 Curtis also contends that the district court erred in failing to hold a hearing on its challenges to certain custodia legis costs.[14] This contention does not warrant extended discussion.
 
 
 18
 In support of its position, Curtis advances one general argument and one piece of evidence. Curtis asserts that Alejandro Ortiz Cardona, who acted as custodian of the vessel on behalf of Taino, could not have made cash outlays of $172,610.97 over fifteen months since he, as owner of an auto repair shop, could not have access to that much cash.[15] Curtis also submits the affidavit of Benjamin B. Gifter as evidence that the custodial care delineated by Taino in its expense submissions to the district court was not really provided.[16]
 
 
 19
 Simply put, Curtis's argument and evidence are far from sufficient for us to find that the district court abused its discretion in failing to hold the requested hearing. Curtis has submitted no evidence supporting its blanket assertion about Ortiz Cardona's alleged lack of access to cash. Nor has it specifically called into question the veracity of any of Ortiz Cardona's supporting documentation.[17] The Gifter affidavit tends to establish nothing other than the fact that on three occasions during a fifteen month period, no person was on the vessel's deck and thus visible from the dock area. Obviously, the district court acted well within its discretion in viewing such fact, even if accepted, as insufficient to call into question whether Taino actually provided the custodial care claimed in its expense submissions.
 
 
 20
 In light of the foregoing, we conclude that the district court did not abuse its discretion in failing to hold a hearing on Curtis's challenge to certain custodia legis expenses claimed by Taino.
 
 III.
 CONCLUSION
 
 21
 Because we find that Curtis's arguments are without merit, we affirm the judgment of the district court.
 
 
 22
 Affirmed. Costs to appellee.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 According to the complaint, Curtis is an alter ego of Robert Brewis and Connie Frazier. Neither Brewis nor Frazier is a party to this appeal
 
 
 [2]
 The Agreement provided that any dispute between Curtis and Taino would be settled by arbitration in Miami, Florida
 
 
 [3]
 The complaint subsequently was amended to request damages in excess of $910,000
 
 
 [4]
 9 U.S.C. § 8 governs proceedings begun by libel in admiralty and seizure of a vessel or property. It provides:
 If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.
 
 
 [5]
 Rule C of the Supplemental Rules governs actions in rem. In relevant part, the version of Rule C(3) in effect at the time Taino filed its complaint provided:
 [T]he verified complaint and any supporting papers shall be reviewed by the court and, if the conditions for an action in rem appear to exist, an order so stating and authorizing a warrant for the arrest of the vessel or other property that is the subject of the action shall issue and be delivered to the clerk who shall prepare the warrant and deliver it to the marshal for service....
 
 
 [6]
 The notice of stay contained no such language
 
 
 [7]
 Indeed, it appears that Taino only became aware that Curtis was seeking dissolution of the vessel's arrest when the court so notified it in a margin order entered on Curtis's notice of stay
 
 
 [8]
 Although not a part of the district court record, we take judicial notice of the proceedings before the bankruptcy court per the request of Curtis. See Fed.R.Evid. 201(d)
 
 
 [9]
 The copy of the motion in Curtis's appendix is dated February 13, 1991. The motion itself is not, however, date-stamped. Nor does the district court docket sheet indicate that any such motion was filed on February 13, 1991. Rather, the docket sheet reflects that the motion was filed on February 25, 1991
 
 
 [10]
 On February 27, 1991, the district court did, however, issue an order staying the action before it, stating that the arrest of the vessel would remain in effect until either Curtis posted security or the bankruptcy court "vacates the automatic stay of this action, avoid[s] the liens, or otherwise act[s] according to its jurisdiction."
 
 
 [11]
 The basis of the district court's denial is not made clear by the record
 
 
 [12]
 We do not, of course, express an opinion on whether the bankruptcy court was correct in compelling Taino to proceed to arbitration despite the fact that Curtis had not yet posted security
 
 
 [13]
 Taino argues that Congress's use of the word "then" in 9 U.S.C. § 8, see supra note 4, evinces an intent that courts should not direct parties to proceed with arbitration until such time as bond is posted since the posting of bond occurs during "the usual course" of an admiralty arrest. Regardless of whether Taino's position is correct, it strikes us that it is based upon at least a plausible reading of the statute
 
 
 [14]
 Curtis neither argues nor points us to any authority suggesting that a hearing is always necessary before a court can award custodia legis expenses. Accordingly, we construe Curtis's argument as being that the court's failure to hold a hearing in this instance was an abuse of its discretion
 
 
 [15]
 We note that in support of his claimed custodial expenses, Ortiz Cardona submitted to the court both copies of cash receipts and a sworn statement that the expenses at issue were "necessarily incurred in the custody of the vessel and the services for which the fees have been charged were actually and necessarily performed."
 
 
 [16]
 Gifter is a rabbi who, while in Mayaguez "supervising special Kosher productions at the Star Kist Tuna plant," had occasion to visit the area where the vessel was docked during the period of its arrest. Gifter asserts that during three visits to the dock area, he did not observe any guards on board the vessel. Gifter further states that on two subsequent visits, he observed a male person sleeping on a hammock on board the vessel
 
 
 [17]
 In fact, the only specific item challenged by Curtis is a claim for 12% interest on cash outlays made by Ortiz Cardona in his sworn statement. Curtis argues that the 12% interest figure is outrageously high
 Curtis's challenge to the interest claimed by Ortiz Cardona does not alter our conclusion that the district court was not required to hold a hearing. First of all, this argument was not made before the district court. Therefore, Curtis is precluded from making it here. See, e.g., Federal Deposit Ins. Corp. v. World Univ., 978 F.2d 10, 13 (1st Cir.1992) (arguments ordinarily cannot be made for the first time on appeal) (citations omitted). Moreover, even if the argument were not procedurally defaulted, it is apparent that it lacks substantive merit. The record reflects that, in the end, Taino never submitted to the district court Ortiz Cardona's request for 12% interest in its final claim for custodia legis expenses.