UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-1424

UNITED STATES OF AMERICA,

Appellee,

v.

STEVEN RICCIARDELLI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Andrew A. Caffrey, Senior U. S. District Judge]

Before

Torruella, Selya and Stahl,

Circuit Judges.

John H. LaChance, with whom LaChance & Whatley was on brief,

for appellant.
Robert E. Richardson, Assistant United States Attorney, with

whom A. John Pappalardo, United States Attorney, was on brief,

for appellee.

June 22, 1993

SELYA, Circuit Judge. Defendant-appellant Steven
SELYA, Circuit Judge.

Ricciardelli was convicted at a bench trial of violating 18

U.S.C. 2252(a)(2) (1988), a statute that criminalizes the

knowing receipt through the mails of a "visual depiction [that]

involves the use of a minor engaging in sexually explicit conduct

. . . ." Ricciardelli appeals, contending that the district

court erred in denying his motion to suppress evidence obtained

pursuant to the execution of an anticipatory search warrant. We

conclude that, although the Constitution does not altogether

proscribe the use of such anticipatory warrants, the warrant

employed here was constitutionally infirm. We, therefore,

reverse.

I. BACKGROUND

In 1988, Houston police breathed life into a moribund

child pornography investigation by giving federal postal

inspectors a customer list unearthed during a 1975 probe of a

suspected pornography distributor. Appellant's name appeared on

the list. The postal inspectors subsequently spawned a

fictitious "front" company, Globe-Tex Specialties, and targeted

Ricciardelli in a sting operation. After preliminary

correspondence elicited interest on Ricciardelli's part, Globe-

Tex sent him a catalog from which he ordered several videotapes.

Globe-Tex notified him that only one tape was immediately

available and promised to mail it forthwith.

On the day prior to the scheduled delivery, the postal

inspectors applied for, and a magistrate judge issued, a search

2

warrant. The warrant authorized the investigators to search

appellant's residence for, inter alia, correspondence, documents,

and objects related to contacts with either Globe-Tex or the

Houston pornography dealer. By its express terms, the search

warrant would "not be effective until after delivery by mail to

and receipt by Steven L. Ricciardelli of the . . . package

containing the videotape."

The day after the warrant was issued, postal inspectors

gave the package containing the videotape to the local post

office for delivery. A return receipt, affixed to the parcel,

required that appellant sign for it. The letter carrier tried to

deliver the package that day but appellant was not home.

Following standard practice, the postman left a notice on the

premises indicating that appellant could collect the item at the

post office. That afternoon, appellant retrieved the package and

returned to his home. About thirty minutes later, postal

inspectors executed the warrant, recovering the videotape, some

correspondence, and a number of other films and magazines not

mentioned in the warrant.

Appellant was indicted. The district court summarily

denied his motion to suppress the materials seized from his

dwelling. Subsequently, appellant stipulated to the pertinent

facts and the judge found him guilty. This appeal ensued.

II. ANALYSIS

We divide our analysis of this case into segments. We

first discuss the constitutionality of anticipatory search

3

warrants as a general matter. We then turn to specifics,

discussing certain alleged deficiencies in the warrant obtained

by the postal inspectors. We end by addressing the government's

contentions that appellant's submissiveness and/or the postal

inspectors' good faith palliated any defects in the warrant.

A. Anticipatory Search Warrants.

At the outset, appellant seeks to bowl a ten-strike:

he asks us to rule that so-called anticipatory search warrants

are per se unconstitutional. This initiative presents a

question of first impression in this circuit.1

Anticipatory search warrants are peculiar to property

in transit. Such warrants provide a solution to a dilemma that

has long vexed law enforcement agencies: whether, on the one

hand, to allow the delivery of contraband to be completed before

obtaining a search warrant, thus risking the destruction or

dispersement of evidence in the ensuing interval, or, on the

other hand, seizing the contraband on its arrival without a

warrant, thus risking suppression. Anticipatory warrants

warrants that are issued in advance of the receipt of particular

property at the premises designated in the warrant2 strike a

1We cannot escape this issue for, if anticipatory search
warrants are valid at all, the rules pertaining to their issuance
will necessarily determine the legal sufficiency of the warrant
obtained in this case.

2To be sure, an anticipatory warrant can be directed toward
the search of a person instead of a place. For ease in
reference, however, we speak throughout this opinion of searches
of places rather than of persons (although we note that the same
principles apply in either case).

4

third chord, protecting privacy rights by requiring advance

judicial approval of a planned search while simultaneously

satisfying legitimate law enforcement needs. See United States

v. Garcia, 882 F.2d 699, 703 (2d Cir.), cert. denied, 493 U.S.

943 (1989); see also 2 Wayne LaFave, Search and Seizure 3.7(c),

at 97 (1987).

Appellant's constitutional challenge to the use of

anticipatory warrants proceeds under the aegis of the Fourth

Amendment. His theory is epibolic. First, he remarks the

obvious that a warrant can issue only "upon a showing of

probable cause," U.S. Const. Amend. IV and interprets this as

requiring probable cause to believe that the contraband to be

seized is in the place to be searched at the time a warrant

issues. He then erects a second proposition on this problematic

pedestal, professing that a magistrate can have no

constitutionally sufficient basis for issuing a warrant at a time

when the contraband is elsewhere and, presumably, probable cause

does not exist. In our view, appellant's theory misconstrues the

meaning of probable cause.

The probable cause doctrine does not require that the

contraband to be seized must presently be located at the premises

to be searched, only that there is probable cause to believe that

a crime has been (or is being) committed and that evidence of it

can likely be found at the described locus at the time of the

search. See United States v. Aguirre, 839 F.2d 854, 857-58 (1st

Cir. 1987). "Probability is the touchstone [of probable cause] .

5

. . ." United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir.

1987) (collecting cases). In the stereotypical case, an item's

current location creates a probability that it will be at the

same location when the search is executed but there are no

guarantees. The suspect might move or destroy the contraband

before the warrant is executed. Nevertheless, so long as the

requisite probability exists, the possibility that things might

go awry does not forestall the issuance of a warrant. After all,

"[p]robable cause need not be tantamount to proof beyond a

reasonable doubt." United States v. Hoffman, 832 F.2d 1299,

1305-06 (1st Cir. 1987); accord Illinois v. Gates, 462 U.S. 213,

238 (1983) (requiring "a fair probability that contraband . . .

will be found in a particular place"); United States v. Caggiano,

899 F.2d 99, 102 (1st Cir. 1990) (collecting cases).

Seen from this perspective, it is difficult to discern

the constitutional objection to an anticipatory warrant. In many

cases, the facts put forward in support of an anticipatory search

warrant predicated on the planned delivery of contraband to a

particular location establish a greater likelihood that the

contraband will be found there at the time of the search (which

will be contemporaneous with the arrival of the contraband, or

nearly so) than do facts put forward in support of a more

conventional search warrant predicated on the known recent

location of contraband at the proposed search site. Moreover,

the method of the Fourth Amendment inserting a neutral,

detached judicial officer as a buffer between a citizen's privacy

6

rights and potential government overreaching works equally as

well in connection with anticipatory warrants. In either

instance, contemporary or anticipatory, the focal point of the

magistrate's inquiry is whether there is probable cause to think

that the contraband will be at the place to be searched at the

time of the contemplated intrusion. That the event justifying

the intrusion has not yet occurred does not distort the

decisionmaking process. Rather, the magistrate must simply widen

his horizons to take into account the likelihood that the

triggering event will occur on schedule and as predicted in

making his probable cause determination.3

Mindful of these considerations, we find it

unsurprising that every circuit to have addressed the question

has held that anticipatory search warrants are not categorically

unconstitutional. See, e.g., United States v. Tagbering, 985

F.2d 946, 950 (8th Cir. 1993); United States v. Wylie, 919 F.2d

969, 974-75 (5th Cir. 1990); United States v. Goodwin, 854 F.2d

33, 36 (4th Cir. 1988); United States v. Goff, 681 F.2d 1238,

1240 (9th Cir. 1982); United States v. Lowe, 575 F.2d 1193, 1194

(6th Cir.), cert. denied, 439 U.S. 869 (1978); United States ex

3This is not very different than a magistrate issuing a
warrant for a wiretap a warrant which, in actuality,
contemplates a "seizure" of specific oral communications which,
by definition, do not exist at the time of the warrant's
issuance. Such a warrant can appropriately be viewed as an
anticipatory warrant for the seizure of words: the magistrate
issues the warrant on the basis of a substantial probability that
crime-related conversations will ensue. Clearly, such warrants
are permitted under the Fourth Amendment. See Katz v. United

States, 389 U.S. 347, 354-55 (1967); Berger v. New York, 388 U.S.

41, 63 (1967).

7

rel. Beal v. Skaff, 418 F.2d 430, 432-33 (7th Cir. 1969); see

also United States v. Nixon, 918 F.2d 895, 903 n.6 (11th Cir.

1990) (dictum). We, too, believe that there is no Fourth

Amendment infirmity indigenous to anticipatory search warrants

although such warrants must, of course, be issued under proper

circumstances, upon a proper showing, and with proper safeguards.

We hold, therefore, that when law enforcement personnel offer a

magistrate reliable, independent evidence indicating that a

delivery of contraband will very likely occur at a particular

place, and when the magistrate conditions the warrant's execution

for the search of that place on that delivery, the warrant, if

not overbroad or otherwise defective, passes constitutional

muster. That the contraband has not yet reached the premises to

be searched at the time the warrant issues is not, in

constitutional terms, an insuperable obstacle.

B. Exigent Circumstances.

Appellant next suggests that, even if anticipatory

warrants are not invalid per se, their use must be confined to

circumstances in which time is of the essence, e.g., drug cases,

where a significant danger lurks that the evidence might be lost

if the search is not made in close temporal proximity to the

contraband's delivery. We disagree: the absence of exigent

circumstances and the government readily concedes that none are

present here does not outlaw the use of an anticipatory

warrant.

We need not linger. The Eighth Circuit recently

8

rejected this precise argument. In Tagbering, the court stated

that the presence or absence of exigent circumstances is

irrelevant in determining whether an anticipatory search warrant

should issue. See Tagbering, 985 F.2d at 950 n.6. We share this

view. Where the probable cause requirement for an anticipatory

search warrant has been fulfilled, there is no necessity for an

independent showing of exigent circumstances. Cf. United States

v. Panitz, 907 F.2d 1267, 1270 (1st Cir. 1990) (reiterating that

where a vehicle search is supported by probable cause, no

exigency need exist to justify warrantless search).

The logic behind this conclusion is inescapable.4

Probable cause is probable cause; the justification for a search

does not vanish merely because the circumstances are such that

the evidence could have been obtained through a more familiar

method. See United States v. Johns, 469 U.S. 478, 484 (1985);

United States v. LaFrance, 879 F.2d 1, 4-5 (1st Cir. 1989);

United States v. McHugh, 769 F.2d 860, 865-66 (1st Cir. 1985);

see also United States v. Rabinowitz, 339 U.S. 56, 66 (1950)

("The relevant test is not whether it is reasonable to procure a

search warrant, but whether the search was reasonable."). That

the authorities might often be better positioned in child

4Indeed, as both Tagbering and Panitz point out, if exigent

circumstances exist, there is, by definition, no need for any
kind of search warrant. See Tagbering, 985 F.2d at 950 n.6;

Panitz, 907 F.2d at 1270 & n.3. The other side of the coin is

equally revealing: exigent circumstances will rarely, if ever,
be present in child pornography cases, as history teaches that
collectors prefer not to dispose of their dross, typically
retaining obscene materials for years.

9

pornography investigations than in drug investigations to obtain

a conventional search warrant does not cheapen the value of the

magistrate's initial probable cause determination and, thus, "is

not dispositive of any relevant issue." Panitz, 907 F.2d at 1271

n.3. Consequently, we hold that an otherwise valid anticipatory

warrant does not fail merely because the officers might have lost

nothing by waiting until the delivery had been completed before

obtaining a warrant.

C. Definiteness.

We now reach the crux of the suppression issue: Was

the warrant fatally defective because it failed to forge a

sufficient link between the arrival of the videotape and the

proposed search of appellant's abode? We think that it was.

Although anticipatory search warrants are not

constitutionally foreclosed, see supra Part II(A), a warrant

conditioned on a future event presents a potential for abuse

above and beyond that which exists in more traditional settings:

inevitably, the executing agents are called upon to determine

when and whether the triggering event specified in the warrant

has actually occurred. Consequently, magistrates who are asked

to issue such warrants must be particularly vigilant in ensuring

that the opportunities for exercising unfettered discretion are

eliminated. To satisfy these concerns, the magistrate must set

conditions governing an anticipatory warrant that are "explicit,

clear, and narrowly drawn so as to avoid misunderstanding or

manipulation by government agents." Garcia, 882 F.2d at 703-04;

10

accord Tagbering, 985 F.2d at 950.

There are two particular dimensions in which

anticipatory warrants must limit the discretion of government

agents. First, the magistrate must ensure that the triggering

event is both ascertainable and preordained. The warrant should

restrict the officers' discretion in detecting the occurrence of

the event to almost ministerial proportions, similar to a search

party's discretion in locating the place to be searched. Only

then, in the prototypical case, are the ends of explicitness and

clarity served. Second, the contraband must be on a sure and

irreversible course to its destination, and a future search of

the destination must be made expressly contingent upon the

contraband's arrival there. Under such circumstances, a number

of courts have found anticipatory search warrants to be valid.

See, e.g., Nixon, 918 F.2d at 903 n.6; United States v.

Dornhofer, 859 F.2d 1195, 1198 (4th Cir. 1988), cert. denied, 490

U.S. 1005 (1989); Goodwin, 854 F.2d at 36; United States v. Hale,

784 F.2d 1465, 1468-69 (9th Cir.), cert. denied, 479 U.S. 829

(1986); Goff, 681 F.2d at 1240. We adopt the "sure and

irreversible course" standard as a means of judging the validity

of anticipatory warrants.

It is at this juncture, however, that we part company

with the government. The sure course standard functions as a

proxy for the actual presence of the contraband at the locus to

be searched. It offers the magistrate a trustworthy assurance

that the contraband, though not yet on the site, will almost

11

certainly be located there at the time of the search, thus

fulfilling the requirement of future probable cause. See, e.g.,

Hale, 784 F.2d at 1468 (finding a warrant for child pornography

that was to be delivered to defendant at his home to be "on a

sure course to its destination" and, hence, valid); Goff, 681

F.2d at 1240 (finding the requirement met where defendant boarded

an airplane and agents then procured a warrant to search him at

the flight's terminus). Implicit in this standard is the

recognition that the evidence must be on an ascertainable course

so that the event on which the warrant is conditioned bears a

definite relationship to the premises to be searched. It is,

moreover, imperative that the warrant establish not only this

kind of tri-cornered nexus between the criminal act, the evidence

to be seized, and the place to be searched, but also that the

nexus incorporate a temporal dimension. The important privacy

interests protected by the Fourth Amendment make it incumbent

upon the magistrate to craft the warrant with explicit, clear,

and narrowly drawn conditions governing its execution to ensure

that the anticipated nexus will actually exist if and when the

warrant is executed. Phrased another way, the event that

triggers the search must be the delivery of the contraband to the

premises to be searched, thereby leaving as little as possible to

the discretion of the agent executing the warrant. See 2 LaFave,

supra 3.7(d), at 101-02.

The instant warrant imposed no such strict conditions.

To the contrary, it overlooked (or, at least, did not address)

12

the need for establishing a nexus between the triggering event

and the place to be searched. Here, the warrant authorized a

search not of appellant's person but of his home, for evidence

relating to his dealings with child pornography distributors.

The search was to be triggered by delivery of the videotape.

Thus, the very premise on which the warrant rested was that the

videotape's arrival would signal the existence of probable cause

to believe that evidence of a crime the videotape itself as

well as evidence of criminal predisposition or other nefarious

activity was likely located in the dwelling. The warrant's text,

however, completely ignored this connection, conditioning the

search not on the arrival of the videotape at the place to be

searched, but, rather, on appellant's personal receipt of the

videotape, wherever he might be and wherever he might take his

prize. By the terms of the warrant, once appellant retrieved the

package at the post office, the postal inspectors could have

searched his abode whether or not appellant brought the

contraband there. An anticipatory search warrant that cedes such

great discretion to the executing agents cannot withstand

constitutional scrutiny.

In United States v. Hendricks, 743 F.2d 653 (9th Cir.

1985), cert. denied, 470 U.S. 1006 (1986), the Ninth Circuit

grappled with an almost identical nexus problem when considering

the validity of an anticipatory warrant. There, a package

containing contraband was shipped in a way that required

defendant to pick up the package personally, rather than merely

13

having it delivered to his home. See id. at 653. Even though

the contraband actually arrived at defendant's residence, the

Ninth Circuit invalidated the warrant on the ground that it

failed to forge the requisite link between the described premises

and the illegal activity. See id. at 655. The court reasoned

that, although the warrant listed a specific location to be

searched, once the box was picked up any number of circumstances

might intervene to snuff out a future connection between it and

the premises. See id. at 654-55.

The case at hand parallels Hendricks in important

respects.5 Here, as in Hendricks, the package, once retrieved,

could have been taken anywhere. Here, as in Hendricks, the

conditions governing the execution of the anticipatory search

warrant were extremely susceptible to the discretion of the

executing officers. Here, as in Hendricks, the warrant was too

broadly drawn in that it did not ensure that the contraband was

on a sure course to the premises to be searched. Here, as in

Hendricks, even though the defendant happened to take the

contraband home, the warrant did not establish an adequate three-

way nexus between the criminal activity, the evidence to be

seized, and the premises. It follows inexorably that here, as in

Hendricks, the search warrant was invalid.

Nor can we read the warrant as treating the search of

5To be sure, the case at hand differs from Hendricks in the

respect that, here, the authorities made an abortive attempt to
deliver the package directly to the defendant's residence. We do
not consider this distinction to possess decretory significance.

14

appellant's abode as an event separate from his receipt of the

videotape. The affidavit supporting the warrant bases the postal

inspector's conclusions anent probable cause upon appellant's

future receipt of the videotape at his home. What is more, it is

the triggering condition of appellant's receipt of the videotape

at home that eliminates alternative possibilities, say, that

appellant was a runner for some other person, or simply an

internuncio, thereby producing probable cause to believe that

appellant is a collector of child pornography and, hence, that

his residence likely contains evidence of his criminality. See,

e.g., id. at 654 (invalidating warrant where triggering event was

not certain and independent probable cause did not exist).

Therefore, unless the search can be saved on some other theory,

an inquiry to which we now turn, the fruits of the search must be

suppressed.6

D. Consent.

The government asseverates that any infirmity in the

search warrant was assuaged by appellant's supposed consent to

the postal inspectors' seizure of the videotape. We reject this

6Our concurring brother takes the view that the warrant
cannot stand because it was based in part on stale information.
See, e.g., United States v. Bucuvalas, 970 F.2d 937, 940 (1st

Cir. 1992) (discussing criteria for reliability of information on
which probable cause determination is based), cert. denied, 113

S. Ct. 1382 (1993). We find this proposition troubling, as it
overlooks the undeniable fact that, in addition to what
transpired in the past, the affidavit also contains ample "non-
stale" information concerning appellant's ordering of illicit
materials from Globe-Tex shortly before the search warrant
issued. In any event, given our conclusion that the warrant is
void for indefiniteness, we need not resolve the staleness
question.

15

asseveration on three grounds. In the first place, the record

discloses no finding by the district court that appellant

consented to a seizure. Second, even if appellant voiced his

consent, a court could not plausibly find such consent to have

been voluntary in the atmosphere created by the postal

inspectors' execution of the invalid warrant. See, e.g., United

States v. Maragh, 894 F.2d 415, 419-20 (D.C. Cir.) (finding that

consent does not cure an unlawful seizure), cert. denied, 498

U.S. 880 (1990); see also United States v. Twomey, 884 F.2d 46,

50-51 (1st Cir. 1989) (identifying criteria helpful in

determining voluntariness of consent), cert. denied, 496 U.S. 908

(1990). Once appellant was led down the garden path, persuaded

that the search warrant was unimpugnable, his subsequent consent

must be viewed as merely an accommodation to the authorities.

See Florida v. Royer, 460 U.S. 491, 497 (1983); Lo-Ji Sales, Inc.

v. New York, 442 U.S. 319, 329 (1979). At any rate, the consent

issue is academic because, as the government concedes, the

videotape was within the perimeter of the search warrant (which

provided for the seizure of all "objects" related to Globe-Tex

Specialties). Inasmuch as the videotape is an immediate fruit of

an invalid search warrant, it must be suppressed.7 See Illinois

v. Rodriguez, 110 S. Ct. 2793, 2799 (1990).

7We need not consider the effect of appellant's alleged
consent on the suppression of magazines and other detritus not
encompassed by the search warrant. The short, conclusive answer
in regard to such items is that the government did not seek to
use them against appellant or introduce them into evidence at the
trial. Any controversy anent such items is, therefore, moot.
See, e.g., Smith v. INS, 585 F.2d 600, 602 (3d Cir. 1978).

16

E. Good Faith.

The government strains to persuade us that, even if the

warrant self-destructs, the evidence seized can be used against

Ricciardelli under the good faith exception to the exclusionary

rule. We are not convinced.

In United States v. Leon, 468 U.S. 897 (1984), the

Supreme Court explained that the exclusionary rule is a deterrent

measure designed to ensure compliance with the Fourth Amendment.

See id. at 906. The Court believed that there would often be no

deterrence when police obtain evidence in reliance on a search

warrant that is subsequently found to be defective; "in most such

cases, there is no police illegality and thus nothing to deter."

Id. at 921. Hence, exclusion of seized evidence under those

conditions serves no salutary purpose because that sanction

"cannot logically contribute to the deterrence of Fourth

Amendment violations." Id.

Although weakening the exclusionary rule, the Court did

not defenestrate it. The Justices acknowledged that suppression

would continue to be appropriate in situations where,

notwithstanding the issuance of a warrant, "the law enforcement

officer had knowledge, or may properly be charged with knowledge,

that the search was unconstitutional under the Fourth Amendment."

Id. at 919. Thus, to cite two instances, suppression would be

proper where the "warrant [is] . . . so facially deficient

i.e., in failing to particularize the place to be searched or the

things to be seized that the executing officers cannot

17

reasonably presume it to be valid," or the warrant is "so lacking

in indicia of probable cause as to render official belief in its

existence entirely unreasonable." Id. at 923 (citation and

internal quotation marks omitted). If, however, the warrant's

defectiveness results from mere technical errors, see

Massachusetts v. Sheppard, 468 U.S. 981, 984, 990-92 (1984),

bevues by the magistrate not readily evident to a competent

officer, see United States v. Bonner, 808 F.2d 864, 867 (1st Cir.

1986) (suggesting that exclusion of evidence is inappropriate

where the magistrate, as opposed to the officers, is responsible

for a defective warrant), cert. denied, 481 U.S. 1006 (1987), or

borderline calls about the existence of probable cause, see Leon,

468 U.S. at 926 (favoring non-exclusion in situations where the

warrant is based on "evidence sufficient to create disagreement

among thoughtful and competent judges as to the existence of

probable cause"), then the evidence may be used, despite the

warrant's defectiveness.

To summarize, the exclusionary rule is alive and well

to the extent that a warrant's defectiveness results from either

(1) non-technical errors of a kind that a reasonably prudent

officer would (or should) have recognized, or (2) law enforcement

officers' acts or omissions of a kind that a reasonably prudent

officer would have avoided. See 1 LaFave, supra 1.2(d), at 38

(explaining that searching officer's erroneous understanding of

Fourth Amendment limits on his power still presents a compelling

case for exclusion).

18

After Leon, how does a court tell whether a defect in a

warrant is fatal? In determining whether a reasonable officer

should have known that a search was illegal despite a

magistrate's authorization, a court must evaluate all the

attendant circumstances, see Leon, 468 U.S. at 922 n.23; Earle v.

Benoit, 850 F.2d 836, 848 (1st Cir. 1988), keeping in mind that

Leon requires not merely good faith, but objective good faith.

See United States v. Curzi, 867 F.2d 36, 44 (1st Cir. 1989). And

when, as now, a government agent asserts good faith reliance on a

magistrate's decision to issue a warrant, the court must focus

upon the existence vel non of objective good faith at the time of

the warrant application. See Malley v. Briggs, 475 U.S. 335,

344-45 (1986); Earle, 850 F.2d at 848.

Here, the government fails both parts of the good faith

test. After studying the record on appeal, we conclude that the

warrant, as issued, contained non-technical defects readily

observable to experienced postal inspectors and, moreover, that

the inspectors' omissions in the warrant-application process

constituted a second, independently sufficient ground for

distinguishing this case from Leon. Accordingly, the evidence

seized under the anticipatory warrant and introduced at trial

should have been suppressed.

In connection with the first prong of the test, we

find, without serious question, that the defects on the warrant's

face were apparent enough that the postal inspectors should have

realized that it did not comport with the Fourth Amendment. The

19

law was settled that the conditions governing the execution of

anticipatory warrants must be explicit, clear, and narrowly

drawn. The instant warrant plainly did not satisfy these

criteria; and, furthermore, the principal omission in the warrant

the lack of any requirement that the contraband arrive at the

premises was both glaring and easily correctable. Examining

the postal inspectors' actions in this light, it is crystal clear

that they could, and should, have asked the magistrate to

condition the search of appellant's home on the delivery of the

videotape there; failing both to insert this condition and to

recognize the consequences of its omission constituted

objectively unreasonable conduct. It follows, then, that

attempting to execute an anticipatory search warrant bereft of

such a limiting condition fell "outside the range of professional

competence expected" of federal agents.8 Malley, 475 U.S. at

346 n.9; see also United States v. Washington, 797 F.2d 1461,

1473 (9th Cir. 1986) (ruling that "patently overbroad" warrant

did not give rise to objective good faith under Leon); United

States v. Crozier, 777 F.2d 1376, 1382 (9th Cir. 1985)

(concluding that overbreadth in a search warrant comprised "no

mere technical error").

8While the standard is one of objective reasonableness, we
note that the postal inspectors who orchestrated this operation
were veterans of the government's war against child pornography.
In the affidavit accompanying the application for the search
warrant, one of the postal inspectors stated that he had "been
involved in approximately 300 child pornography and child sexual
exploitation investigations" and had "personally been involved in
the execution of at least 75 search warrants . . . relative to
child sexual exploitation investigations."

20

Although the failure to correct evident defects is

itself sufficient to support suppression here, it is also true

that other omissions attributable to the agents would,

independently, have required the same result. Government agents

may not trespass beyond the bounds of well-delineated Fourth

Amendment procedures and then attempt to blunt the effects of

their pererrations by foisting the blame on the magistrate. See

Malley, 475 U.S. at 346 n.9; United States v. Baker, 894 F.2d

1144, 1148 (10th Cir. 1990). This principle applies with

especial force where, as in this case, a sting operation,

culminating in a controlled delivery, is involved. The

government knew the plot; indeed, it invented Globe-Tex and

produced the sting from start to finish. Yet, the postal

inspectors failed to share the full script of their stage-play

with the magistrate. They cannot now fault the magistrate for

their bad reviews.

In this respect, the case at bar is reminiscent of

United States v. Fuccillo, 808 F.2d 173 (1st Cir.), cert. denied,

482 U.S. 905 (1987). In Fuccillo, we held that the good faith

exception would not salvage a search where, inter alia, the

warrant did not sufficiently describe the things to be seized,

because the officer possessed facts which should have enabled him

to describe the property to be seized more accurately. Id. at

177, 178 (stating that the warrant "could have been written with

precision to assure that appellee's personal rights would remain

inviolate" and that "the agents were reckless in not including in

21

the affidavit information which was known or easily accessible to

them"). Where the omission of a key ingredient, known to the law

enforcement officers, leads to the subsequent invalidation of the

warrant, the government faces a high hurdle in seeking to show

objective good faith.

When issuing anticipatory warrants, magistrates must

rely to a large extent on the expertise of federal agents as to

the certainty that the triggering event will occur. Particularly

where, as in this case, the agents preset elaborate plans to

search and seize, magistrates can only act to ensure respect for

the Fourth Amendment's protections if they are informed of the

plan's discretionary elements. Thus, the postal inspectors here

were responsible for conveying to the magistrate the various

possible outcomes in their scheme to deliver the Globe-Tex

package to Ricciardelli. In particular, the inspectors should

have apprised the magistrate of the (apparently significant)

chance that the package would not be delivered to Ricciardelli's

home at all a possibility that they undeniably had

envisioned.9 Fully informed, the magistrate might have drawn a

more finely tuned warrant. See Rivera v. United States, 928 F.2d

592, 603 (2d Cir. 1991); see also Fuccillo, 808 F.2d at 178

(warning that, in applying for a warrant, agents must "take every

9At the suppression hearing, Inspector Dunn, whose affidavit
supported the search warrant, testified that the inspectors' plan
to execute the search warrant "[d]epend[ed] on what
[Ricciardelli] did after he picked it up." His affidavit,
however, did not disclose to the magistrate the variety of
possible outcomes or the inspectors' contingency plans.

22

step that could reasonably be expected of them").

In fine, the Leon doctrine does not apply in this case

both because a reasonably prudent officer should have known that

the procured warrant was substantially defective on its face, and

because the defect was largely, if not entirely, the result of

the officers' incomplete account to the magistrate.10 In the

circumstances, the magistrate's imprimatur on the warrant cannot

save the day. The exclusionary rule obtains. Suppression of the

evidence seized by means of the invalid warrant is appropriate

"to compel respect for the constitutional guaranty in the only

effectively available way by removing the incentive to

disregard it." Mapp v. Ohio, 367 U.S. 643, 656 (1961).

III. CONCLUSION

We need go no further.11 Although anticipatory

10Although the point is not instrumental to either the
analysis or the outcome here, we note that the Leon exception

does not absolve government officers from every mistake made in
good faith during the execution of a warrant. See, Leon, 468

U.S. at 920; see also United States v. Strand, 761 F.2d 449, 456-

57 (8th Cir. 1985) (holding Leon inapplicable to seizures outside

the scope of a warrant). For instance, Leon's good faith rule

would not excuse full-blown mistakes in the execution of a
warrant. See, e.g., Maryland v. Garrison, 480 U.S. 79, 89 n.14

(1987) (explaining that, when "police begin to execute the
warrant and . . . discover [a] factual mistake[, they] must
reasonably limit their search accordingly"). Hence, if a
situation arises in which officers wrongly conclude that the
triggering event needed to animate an anticipatory warrant has
occurred, and proceed to execute a full search in the face of
this mistake, we would not review that mistake under Leon's good

faith standard.

11After this appeal was fully briefed, but before oral
argument, the Ninth Circuit struck down the Protection of
Children Against Sexual Exploitation Act, 18 U.S.C. 2251-2255
(1988), of which section 2252(a)(2) is a part, on constitutional
grounds. See United States v. X-citement Video, Inc., 982 F.2d

23

search warrants are constitutionally allowable, the warrant used

in this case suffered from a fatal defect that was neither cured

by any enforceable consent nor subject to amelioration under the

Leon doctrine. Accordingly, appellant's motion to suppress the

fruits

of the search should have been granted.

Appellant's conviction is vacated and the district

court's denial of appellant's motion to suppress is reversed.

Concurring Opinion Follows

1285, 1292 (9th Cir. 1992). This issue was neither briefed nor
argued before us. Hence, we take no view of the statute's
constitutionality.

24

TORRUELLA, Circuit Judge (Concurring). Although I

agree that appellant's conviction should be vacated, I have

serious reservations about the majority's approach to that

result. The majority unnecessarily addresses the constitutional

validity of anticipatory search warrants and, having done that,

resolves the issue incorrectly.

I begin by describing the areas in which my views are

most similar to those of the majority. We both agree that the

warrant in this case was utterly unsupported by probable cause.

I find, however, that the warrant was tainted by information too

stale to carry the crisp reliability necessary to find probable

cause. While the majority contentedly dismisses this aspect of

the case, ante at 15 n.6, I believe that it provides for the

proper resolution of this appeal.

As the majority eloquently states, "In 1988, Houston

police breathed life into a moribund child pornography

investigation by giving federal postal inspectors a customer list

unearthed during a 1975 probe of a suspected pornography

distributor." Ante at 2. The activity unearthed by the moribund

investigation -- appellant ordered two films from a child

pornography dealer -- occurred in 1974. In 1990, postal

inspectors conducted a sting which lured appellant to buy

forbidden films, and applied for a warrant to search his home for

those and other materials. The 1990 operation and warrant

application were based, thus, on appellant's activities which

occurred sixteen years before.

-24-
24

In this circuit, we do not measure staleness merely on

the basis of the maturity of the information. United States v.

Bucuvalas, 970 F.2d 937, 940 (1st Cir. 1992), cert. denied, 113

S. Ct. 1382 (1993). Other factors include 1) whether the

criminal activity is ongoing or discrete; 2) whether the criminal

is entrenched or nomadic; 3) whether the items to be seized are

long-lasting or perishable; and 4) whether the premises to be

searched are a secure operating base or a mere criminal forum.

Id. The application of these factors to the facts of the present

case, some not fully detailed in the majority opinion, discloses

the stagnant heart of this case.

First, the statute that appellant is accused of

violating, 18 U.S.C. 2252(a)(2), prohibits the receipt of child

pornography through interstate commerce or mail. The evidence in

the record of this case shows that appellant only engaged in this

activity twice, on occasions separated by sixteen years. The

activity clearly cannot be described as ongoing. This conclusion

is buttressed by the fact that when appellant placed the first

order, in 1974, the receipt of child pornography through the mail

was not prohibited. An early version of 2252 did not appear

until 1978, with a substantial amendment occurring in 1984, ten

years after appellant's first order. Thus, appellant's first

order was not even illegal. This is a point that must be

emphasized. There was no ongoing illegal activity in this case,

because appellant acted illegally only once, when the government

induced him to do so in a sting operation. In other words,

-25-
25

appellant's recent purchase did not update the 1974 purchase,

because those earlier activities are not comparable in terms of

violation of the law.

Appellant's nomadic nature also negates the ongoing

reliability of his 1974 activity. At that time, appellant lived

in Newton, Massachusetts. Appellant later moved to Framingham,

Massachusetts, and yet again to another address in Framingham.

Appellant lived at his final residence with his mother and

brother, sharing a room with his sibling. The affidavit

contained no information even tending to show that appellant

retained the 1974 materials through these relocations, or that

his coresidents tolerated the presence of prurient material in

the shared premises.

I concede that the affidavit showed the ongoing utility

of child pornography to collectors and pedophiles, discussing how

such individuals keep their dross for long periods of time.

Standing alone, however, this information does not justify the

conclusion that appellant kept the materials throughout sixteen

years and two relocations. The affidavit did not define

collector and pedophile, or characterize appellant as a member of

either class. See United States v. Weber, 923 F.2d 1338, 1345

(9th Cir. 1990) (concerning similar affidavit, the court noted

"the affidavit does not say how many magazines or pictures one

must buy in order to be defined as a 'collector'"). As such, the

affidavit is inconclusive as to the ongoing utility of the

materials to appellant, especially in light of his various

-26-
26

relocations and the long passage of time. Additionally, it

cannot be presumed automatically that appellant would keep

material which was illegal as a result of subsequent legislation,

once such a law went into effect in 1978.

Finally, there is no showing that appellant's address

was a secure base. The affidavit did not adduce that appellant

kept a cache of child pornography there, and appellant's

relocations weaken the existence of this possibility. The

affidavit merely established that the address was appellant's

home, which he shared with his mother and brother. Again, the

fact that he shared his premises with nonparticipants in the

criminal enterprise is a weakening point in terms of the presence

of contraband at that location.

Based on these factors, I find it easy to conclude that

the information pertaining to appellant's 1974 materials could

not support a probable cause finding in this case. Yet, the

stagnant information formed the heart of the inspector's

affidavit and was the only basis for the attenuated inference

that appellant amassed child pornography at his home. Without

it, the sting operation and the search warrant fall. This is as

far as we should go, proceeding directly to quash the conviction.

It is unnecessary to go further into constitutional speculation.

The majority proceeds, however, to answer unnecessarily

a wholly novel question for this circuit: whether the

anticipatory search warrant in this case was constitutional.

Worse yet, it issues a blanket license allowing its proliferation

-27-
27

into common use.

For the majority to do so is an imprudent exercise of

our judicial power. It is axiomatic that we avoid constitutional

rulings unless they are strictly necessary. El D a, Inc. v.

Hern ndez Col n, 963 F.2d 488, 494 (1st Cir. 1992) (citing

Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 461

(1945); Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 346-55

(1936) (Brandeis, J., concurring); Aggarwal v. Ponce School of

Medicine, 745 F.2d 723, 726 (1st Cir. 1984)). The long standing

rationale for this rule is to avoid issuing advisory opinions.

United States v. Hastings, 296 U.S. 188, 193 (1935). Because the

search warrant in this case was utterly unsupported by probable

cause, addressing the constitutionality of anticipatory search

warrants amounts to such an impermissible advisory opinion.

To complicate matters, the majority elects the wrong

side of this unnecessary constitutional issue, choosing a

problematic and erroneous result in this case. Anticipatory

search warrants are violative of the Fourth Amendment, which

plainly states that "no Warrants shall issue, but upon probable

cause." Probable cause must exist to believe at the time of

issuance that the contraband is in the place to be searched.

Steagald v. United States, 451 U.S. 204, 213 (1981) (warrants

issue upon showing of "probable cause to believe that the

legitimate object of a search is located in a particular place")

(emphasis added); United States v. Salvucci, 599 F.2d 1094, 1096

(1st Cir. 1979) ("the Fourth Amendment requires that the

-28-
28

supporting affidavits set forth facts sufficient to allow a

neutral magistrate to reasonably conclude that the property

sought is located on the premises to be searched at the time the

warrant issues") (emphasis added), rev'd on other grounds, 448

U.S. 83 (1980); see also Sgro v. United States, 287 U.S. 206, 208

(1932) ("the proof [supporting probable cause] must be of facts

so closely related to the time of the issue of the warrant as to

justify a finding of probable cause at that time").

The requirement of contemporaneous probable cause flows

from the interests animating the Fourth Amendment. One of the

principle evils which that provision prevents is vesting law

enforcement officers with any discretion as to whether or not the

conditions of the warrant have been complied with. This is

precisely what anticipatory warrants permit in deviating from the

contemporaneous probable cause standard.

It is well established that "[t]he security of one's

privacy against arbitrary intrusion by the police -- which is at

the core of the Fourth Amendment -- is basic to a free society."

Coolidge v. New Hampshire, 403 U.S. 443, 453 (1971) (quoting Wolf

v. Colorado, 338 U.S. 25, 27 (1949)). Accordingly, the Fourth

Amendment places very stringent limits on officers invading an

individual's privacy. "'The proceeding by search warrant is a

drastic one,' and must by carefully circumscribed so as to

prevent unauthorized invasions of 'the sanctity of a man's home

and the privacies of life.'" Berger v. New York, 388 U.S. 41, 58

(1967).

-29-
29

The Fourth Amendment forbids general warrants to

prevent law enforcement officers from rummaging through an

individual's belongings at will. E.g., Andresen v. Maryland, 427

U.S. 463, 480 (1976) (quoting Coolidge, 403 U.S. at 467). The

requirement of a particular description "'makes general searches

. . . impossible and prevents the seizure of one thing under a

warrant describing another. As to what is to be taken, nothing

is left to the discretion of the officer executing the warrant.'"

Id. (quoting Stanford v. Texas, 379 U.S. 476, 485 (1965), itself

quoting Marron v. United States, 275 U.S. 192, 196 (1927)).

Thus, a warrant authorizing a search for obscene publications was

deficient because it "merely repeated the language of the statute

and the complaints, specified no publications, and left to the

individual judgment of each of the many police officers involved

in the selection of such magazines as in his view constituted

'obscene . . . publications.'" Marcus v. Search Warrant, 367

U.S. 717, 732 (1961).

Furthermore, the Fourth Amendment requires that the

probable cause determination be made by a neutral and detached

magistrate, rather than by the officers conducting the search.

It has long been established that

the point of the Fourth Amendment, which
often is not grasped by zealous officers,
is not that it denies law enforcement the
support of the usual inferences which
reasonable men draw from evidence. Its
protection consists in requiring that
those inferences be drawn by a neutral
and detached magistrate instead of being
judged by the officer engaged in the
often competitive enterprise of ferreting

-30-
30

out crime.

Johnson v. United States, 333 U.S. 10, 13-14 (1948). Otherwise,

the Fourth Amendment would be a "nullity" and homes would be

"secure only in the discretion of police officers." Id. at 14.

It is thus clear that the Fourth Amendment is concerned

with insulating the citizenry from the whims of law enforcement

officers. Plainly and simply, the use of anticipatory search

warrants erodes this insulation. When an officer is given an

anticipatory search warrant, the magistrate essentially instructs

the officer as follows: When the following conditions occur,

probable cause to conduct a search will arise. The officer is

then left to determine unilaterally whether, when, and how the

conditions occur which give rise to probable cause.

Law enforcement officers should not be the ones, absent

exigent circumstances, that engage in the sensitive balancing

required to weigh the merits of probable cause in a given case

because they are not neutral parties to the determination of that

crucial inquiry. The majority recognizes the need to limit the

officers' discretion in executing an anticipatory warrant, but

nonetheless foists upon the officers a determination that is

quite sensitive in a constitutional sense. An anticipatory

warrant can only be executed when four threads come together to

form a coherent nexus: the criminal act, the evidence to be

seized, the place to be searched, and the "temporal dimension."

Ante at 12. The officers have virtually unfettered discretion to

determine when this "temporal dimension" has been fulfilled, with

-31-
31

no input from a neutral and detached judicial officer.

The majority also recognizes that "[w]hen issuing

anticipatory warrants, magistrates must rely to a large extent on

the expertise of federal agents as to the certainty that the

triggering event will occur." Ante at 21. Because the majority

finds that probability is the touchstone of probable cause, ante

at 5, this fact demonstrates the great amount of discretion

delegated to law enforcement officers in the anticipatory search

warrant context. Law enforcement officers put together the

probability that gives rise to probable cause, and then determine

when the eventuality occurs. In other words, the officers are in

control of the entire warrant process, shaping the probable cause

determination from start to finish. Such an unfettered and

judicially uncontrolled intrusion into an individual's privacy

interest is precisely what the Fourth Amendment was designed to

prevent.

Incredibly, given the majority's resolution of the

issue, no government interest weighed heavily in favor of the use

of anticipatory search warrants. See New Jersey v. TLO, 469 U.S.

325, 337 (1985) (balancing "the individual's legitimate

expectations of privacy and personal security" with "the

government need for effective methods to deal with breaches of

public order" in passing on the validity of a class of searches).

An officer "engaged in the often competitive enterprise

of ferreting out crime," Johnson, 333 U.S. at 14, has two options

in cases such as this one. Once the controlled delivery of

-32-
32

contraband is complete, he may apply for a search warrant to the

appropriate magistrate. Alternatively, if an exigency should

arise in the course of the controlled delivery requiring

immediate action, the officer is authorized to conduct a

warrantless search pursuant to the well-known exigent

circumstances exception to the warrant requirement. In short,

there is no legitimate need for such a novel erosion of the

Fourth Amendment as is promoted by anticipatory search warrants.

The majority's analogy to warrants for wiretapping,

ante at 7 n.3, is misapplied. When authorizing a wiretap, a

magistrate must observe "precise and discriminate" procedures

specific to wiretaps. Katz v. United States, 389 U.S. 347, 355

(1967) (quoting Berger, 388 U.S. at 57). For example, the

magistrate must identify the telephone number to be tapped and

the conversations to be seized. United States v. Donovan, 429

U.S. 413 (1977). Probable cause must be fully in place before

the wiretap is authorized. These safeguards ensure that "'no

greater invasion of privacy [is] permitted than [is] necessary

under the circumstances.'" Katz, 389 U.S. at 355 (quoting

Berger, 388 U.S. at 57). They thus afford "'similar protections

to those . . . of conventional warrants.'" Id.

As discussed above, anticipatory search warrants, in

addition to lacking the basic protections of conventional

warrants, are simply unnecessary to any legitimate law

enforcement need. Normal search warrants and the exigent

circumstances exception adequately address whatever need may

-33-
33

arise in a controlled delivery. As such, allowing the government

to employ a new technique with which to invade an individual's

privacy interest is completely unwarranted (no pun intended).

-34-
34